O. A. RICE et al., Appellees, v. ARMOUR & COMPANY, Appellant.

**PRINCIPAL AND AGENT:** The Relation—Declarations of Agent.
1  Declarations of an alleged agent are inadmissible to prove such agency.

**EVIDENCE:** Opinion Evidence—Unallowable Conclusion. A witness
2  should not be permitted to state that the business of a named party was "buying hogs for the packers," when the action on trial carried a very sharp issue on the question whether said named party bought the shipment in question "for the packers."

**EVIDENCE:** Declarations—Self-Serving. On the issue whether plaintiff sold a shipment to defendant or to a third party, plaintiff's employee may not testify that he entered a charge on the plaintiff's books against the defendant for said shipment.

**EVIDENCE:** Facts Relevant to Issues—Transaction Between Alleged
4  Principal and Agent. On the issue whether plaintiff sold the shipment in question to defendant through defendant's alleged agent, evidence is admissible as to how the alleged agent and defendant treated the transaction: i. e., that the alleged agent immediately prepared invoices of the shipment and attached one invoice to a draft on defendant and forwarded a duplicate invoice to defendant.

**EVIDENCE:** Opinion Evidence—"Understanding" of Witness. A
5  witness should not be permitted to give his "idea" or "understanding" of a relevant fact bearing strongly on the very matter in issue; and such error is not cured by later testimony tending to show that the witness's "understanding" was entirely erroneous.

**PRINCIPAL AND AGENT:** The Relation—Declarations of Agent. On
6  the issue whether plaintiff sold the shipment in question to defendant through an alleged agent, or whether the alleged agent made the purchase for himself, plaintiff may not testify that the alleged agent, at the time of purchase, stated that the shipment should be "weighed out" to defendant, and that "weighed out" meant that "defendant had bought the shipment."

**TRIAL:** Instructions—Nonpaper Issues. The court need not necessarily submit voluntary nonpaper issues.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

APRIL 4, 1922.

REHEARING DENIED SEPTEMBER 23, 1922.

ACTION to recover the purchase price of two carloads of hogs claimed to have been sold by the plaintiff to the defendant. Verdict for the plaintiff, and defendant appeals.—*Reversed.*

*Kindig, McGill, Stewart & Hatfield,* for appellant.

*Jepson, Struble & Anderson,* for appellees.

FAVILLE, J.—The appellee alleges that, on or about the 20th day of May, 1920, it sold to the appellant two carloads of hogs at Sioux Falls, South Dakota, which hogs were shipped to the appellant at Sioux City, Iowa. The contention of the appellee is that it sold said hogs to the appellant through a firm in Sioux Falls, known as the Hopkins-Harrington Company, which, it is claimed, were agents of the appellant.

The claim of the appellant is that no such agency existed, and that Hopkins-Harrington Company bought the hogs in question from the appellee as independent contractors, and re- sold them to the appellant, and that appellant paid said Hopkins-Harrington Company therefor.

The final question in the case is whether or not Hopkins-Harrington Company were the agents of the appellant in purchasing the hogs, or whether it bought the hogs from the appellee on its own account, and resold them to the appellant.

There was evidence in the case tending to show that the Hopkins-Harrington Company bought stock generally on the Sioux Falls market, and paid for the same with checks drawn upon its own account in a bank at Sioux Falls. It also appears that it sometimes purchased stock on its own account, and also did business as agents in purchasing stock for others. Before the transaction in question, it had shipped stock to the appellant, and the customary course of dealing between the parties was for Hopkins-Harrington Company to draw a draft on the appellant at the time the shipment was made. It was the contention of the appellant that the hogs in question were bought

by Hopkins-Harrington Company from the appellee upon its own behalf, and were resold to the appellant the same day, together with a number of other carloads. There was evidence to the effect that the price agreed upon between the appellee and Hopkins-Harrington Company was 10 cents per hundred weight higher than the price to be paid therefor by Armour & Company.

The evidence tended to show, also, that the Hopkins-Harrington Company was in some financial difficulty, about the time of this transaction, and that the appellee, on the day in question, first refused to sell to the Hopkins-Harrington Company, because of an unpaid indebtedness for previous sales, amounting to some $10,000. However, upon the day of the sale, the Hopkins-Harrington Company gave appellee a check for this past indebtedness, which was cashed; and thereafter the hogs in question were sold. The following morning, the appellee called upon the Hopkins-Harrington Company for a check for the hogs in question, which was refused, it appearing that the credit of said company with the bank had been withdrawn, and that there were not sufficient funds in its account to meet the same. Thereafter, an alleged garnishment of the funds of Hopkins-Harrington Company in a bank at Sioux Falls was procured by the appellee.

At the time the hogs in question, together with others, were shipped to the appellant, a sight draft was drawn on the appellant, with bill of lading attached, which was turned over to a Sioux Falls bank by the Hopkins-Harrington Company, and was honored and paid by the appellant. On the day following the purchase, the appellee wrote a letter to the appellant at Sioux City, inclosing an invoice for the hogs in question, and stating that said hogs "had been purchased and weighed to Armour & Company by a buyer at Sioux Falls, and on account of rumor concerning your buyer at that point, we hereby notify you not to pay for these hogs at Sioux Falls, South Dakota, but authorize you to pay us for these hogs here." There was evidence also to the effect that, on the evening of the day of the sale, an officer of the appellee had a conversation with an officer of the appellant at Sioux City, by telephone, and advised him of the sale of the two carloads of hogs that day at Sioux Falls, and that appellant would have to pay appellee for the same. The evi-

dence also tends to show that thereafter the said officer advised the agent of the appellant of the attempted garnishment of the funds of Hopkins-Harrington Company at Sioux Falls, and that appellee would get the money in that manner.

There was a considerable amount of evidence offered by both parties, bearing on the question as to whether or not the hogs in question were purchased by the Hopkins-Harrington Company as agents for the appellant, or whether it purchased the same in its own behalf, and resold the same to the appellant; but the foregoing is a sufficient outline of the evidence, for the purpose of a consideration of the errors urged on appeal.

I.   It is argued that the court erred in admitting testimony of the declaration of the alleged agent, as tending to establish the agency.   The rule prohibiting the admission of such evidence is elementary.   *Gund Brewing Co. v. Peterson,* 130 Iowa 301; *Lavelleur v. Nugent,* 186 Iowa 234.

1. PRINCIPAL AND AGENT: the relation: declarations of agent.

One of the employees of the appellee was asked, on direct examination, to state the character of the business in which the Hopkins-Harrington Company was engaged.   The answer was, "Buying hogs for the packers."   Objection to the question was overruled, as was a motion to strike the answer.   In view of the question in issue in this case, as to the alleged agency of Hopkins-Harrington Company in making the deal in question, we think this answer was in the nature of a conclusion, and should have been excluded.

2. EVIDENCE: opinion evidence: unallowable conclusion.

This witness was also asked, "Did you make any charge on your records, and if so, against whom?"   This was objected to as "incompetent, irrelevant, and immaterial, and in no way binding on the appellant, no agency having been proven, and a self-serving declaration."   The objection was overruled, and the witness answered, "Armour & Company."   The objection should have been sustained.   The charge which the appellee made upon its own books was not admissible in its own behalf to charge the appellant with the amount of this purchase.   What the appellee did in making its own records, knowledge of which was not communicated to the appellant, was a mere self-serving declara-

3. EVIDENCE: declarations: self-serving.

tion, which should not have been admitted; and, under the issues in the instant case, we think prejudice must be presumed on the admission of such erroneous testimony.

The appellee produced a former bookkeeper of Hopkins-Harrington Company as a witness, and proved by him that, at the time of the sale of the hogs in question, an invoice of shipment was made out in triplicate, the original of which, he testified, was attached to a draft, and one copy mailed to Armour & Company and the other retained in the office of Hopkins-Harrington Company. He identified one of said copies, and the same was offered in evidence, over appellant's objections. The particular point urged is that it was error to receive the exhibit, because of the statement therein contained, "Bought for the account of Armour & Company," and the words, "Commission $25.00." It is now contended that this was in the nature of a declaration on the part of the agent tending to prove the agency, and was, therefore, inadmissible. We do not think the objection to the admissibility of this exhibit was well taken. The appellee had a right to show the transaction between the parties at the time, and what was done between them in connection with the sale of the two carloads of hogs. This was not the declaration of an alleged agent to a third party, but was the invoice proven to have been forwarded by the alleged agent to his alleged principal, and was admissible as showing how the transaction was conducted between these parties. *Fritz v. Chicago Grain & Elev. Co.*, 136 Iowa 699. The objection was to the exhibit as a whole, and not to the parts thereof of which complaint is now made.

The following question was asked of one of the employees of the appellee:

"Q. When you say there was some money in the bank, that is the reason that you went for the check, what did you understand—what was your idea as to whose money this was in the bank?"

The question was objected to as immaterial, incompetent, and calling for the conclusion of the witness, a self-serving declaration, and calling for an understanding. The objection was overruled. It

should have been sustained. The answer was: "Armour & Company, to pay for the hogs Hopkins-Harrington Company had bought."

A member of the firm of Hopkins-Harrington Company afterwards testified, as a witness for the appellant, to the fact that the money in question in the bank was the money of the Hopkins-Harrington Company, and that Hopkins-Harrington Company never had any money belonging to the Armour Company; but we do not think this cured the error in the admission of this testimony. Whether the Hopkins-Harrington Company was paying for the hogs with their own money, on their own account, or with the money of the appellant, had an important bearing on the question of agency. This witness's "understanding" or "idea" as to whose money was in the bank to pay for the hogs was not proper evidence. We cannot say that its admission was without prejudice.

The employee of the appellee who sold the hogs testified regarding a conversation with the representative of Hopkins-Harrington Company at the time of the sale, and the following occurred:

6. Principal and Agent: the relation: declarations of agent.

"Q. Who directed you, if anyone, to whom these were to be shipped? A. Mr. Harmison. Q. What did he say to you? A. To weigh them to Armour & Company. Q. What does that mean, in the common, ordinary way in which it is used in the stockyards in Sioux Falls? (Objected to as being incompetent, irrelevant, and immaterial, and seeking to prove a custom, and not binding on Armour & Company. Overruled.) A. That they were sold to Armour & Company."

It must not be overlooked that the rights of a third party to this conversation are involved here.

We cannot escape the conclusion that the admission of this testimony was error which was prejudicial to the appellant. The issue for determination by the jury was whether or not Armour & Company bought these hogs from the appellee through Hopkins-Harrington Company, as its agent, or whether Hopkins-Harrington Company bought them from the appellee and resold them to Armour & Company. The statement of the employee of Hopkins-Harrington Company to the appellee "to

weigh the hogs to Armour & Company'' might be consistent with either proposition: namely, that they had bought the hogs themselves, and resold them to Armour & Company, or that they were acting as agents for Armour & Company. But the evidence of the witness that the custom at Sioux Falls was that the instruction to weigh them to Armour & Company meant that the hogs *had been bought* by Armour & Company could not be binding upon the latter, as establishing agency. If it were ''read into'' the statement of the employee of Hopkins-Harrington Company (which is the effect of the answer), it would be the declaration of the alleged agent to the effect that he had bought the hogs for his principal. A party cannot be bound by such alleged declarations of an agent, to establish agency. The evidence should have been excluded.

Other alleged errors in the admission of evidence are not liable to occur on a retrial of the case.

II. It is urged that the court erred in failing to submit to the jury the issue of estoppel. The contention of the appellant in respect to this matter is stated as follows:

7. TRIAL: instructions: nonpaper issues.

''Under our system, it is left to the parties to frame the issues; and if they proceed, without objection, to the trial on the issues, even when not properly presented in the pleading, it amounts to the consent to try such issues, and the issues are then rightfully in the case.''

It is then argued that it was error not to submit such issue of estoppel and not to instruct the jury upon it. The theory of the appellant is that there was evidence in the record tending to show an estoppel, and that, even though the question was not put in issue by the pleadings, the court should have submitted it to the jury.

We cannot acquiesce in the conclusions of the appellant in this respect, in the trial of law actions. Cases must be tried upon the issues as presented by the pleadings; and if the parties see fit to wander afield in the trial of a cause, in the introduction of testimony, it does not follow that the court is in error in failing to submit to the jury a question which the parties have thus framed, without any pleading whatsoever. Such a practice would be so loose and slipshod as to be intolerable. The question

of estoppel is claimed to have been brought into the case by an amendment to the answer, filed after the close of the testimony, and after one argument had been submitted. The court at the time permitted the amendment. We assume that it was on the theory that the amendment tended to conform the pleadings to the proof which had been offered. Such a proceeding is well recognized as proper practice, a large discretion, however, resting in the trial court as to when such an amendment shall be filed. After such amendment, the court, however, did not instruct on the question of estoppel. We do not think that the original answer, together with the amendment, was a sufficient legal pleading of the essential elements of estoppel to require the court to submit that issue to the jury. Appellant is in no position to urge error here.

III. It is urged that the court erred in refusing to sustain appellant's motion for a directed verdict. We do not think the court erred in this respect. The questions presented were essentially fact questions, for the consideration of the jury, and appellee made a case for the jury on the record.

IV. It is urged that the court erred in failing to instruct the jury on the theory that:

"A principal is discharged by conduct on the part of a third person which leads the principal to settle with the agent, in the belief that the third person who has dealt with the agent has settled with the agent, or has elected to hold the agent, and not the principal."

There was neither pleading nor proof that required the submission of this question to the jury, and the court did not err in failing to submit it.

For the errors pointed out, the judgment of the district court is reversed and the cause remanded for new trial.—*Reversed and remanded.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.